Alright, our third case for this morning is Federal Deposit Insurance Corporation and its capacity is receiver for Founders Bank against Chicago Title Insurance Company and Chicago Title and Trust. So we will start with Ms. Vancea. Yes. Good morning and may it please the court. My name is Minadora Vancea, counsel for the Federal Deposit Insurance Corporation. In this appeal, the FDIC seeks reversal of three post-trial rulings made by the district court. I begin with prejudgment interest under the federal statute because this issue has great programmatic importance to the FDIC. Section 1821L applies to hundreds of cases that the FDIC brings nationally against directors and officers of failed banks and against service providers such as title insurance and accountants. The district court's interpretation of Section 1821L is incorrect for three reasons. First, Section 1821L's language that recoverable damages shall include appropriate interest mandates an award of prejudgment interest. Well, can I interrupt you here, Ms. Vancea, because there's a preliminary question, which is whether 1821C should be read, I'll say aggressively, to require a federal rule on prejudgment interest or whether it really leaves enough undefined that the correct thing to do is to look to state law to define terms such as appropriate, especially bearing in mind the fact that the FDIC in this whole group of cases is operating its function as a receiver for a state institution. And as you know, the Supreme Court very frequently says in these commercial areas, the content of what the federal agency is doing or what the federal law is, is borrowed from the state law to keep things commercially consistent. So it's quite possible that appropriate interest under Illinois law is a different thing from appropriate interest under North Dakota law or somebody else's law. So I would like you to talk a little bit about why you think we need to just jump right into federal common law for this in the face of the Supreme Court discouraging that move. Your Honor, we are not arguing for federal common law. We are arguing that the interpretation of the word appropriate interest in the federal statute is a matter of federal law. That is under the usual principles of statutory construction and it doesn't require resort to state law. The Supreme Court has repeatedly held that Congress does not make the application of words in a federal statute be dependent on state law. But there are many places where there's a word in federal law and that word is interpreted in accordance with state principles. So to take one example that just pops into my mind, Title VII of the Civil Rights Act of 1964 spends a lot of time talking about who's an employer and who's an employee. But if then you need to decide is somebody really an employee or are they an independent contractor, what the federal courts will do is they will look to state law for guidance on what's an respondent superior liability. So just because it's a word in a federal statute doesn't quite tell me that federal law operates completely independently of state principles. Your Honor, based on the cases that we cite that courts do look to state law for principles that exist for usually real property rights where the rights are defined under state law or for corporate governance rights, but this is not one of those exceptions. The statute here applies not only to state claims that the FDIC has against these service providers under state law. The FDIC often has claims against such service providers under federal law like securities law, RICO, antitrust. So the Supreme Court said it's doubly improper when a statute applies both to claims under federal law and state law to suggest that state law should be used to interpret it. And the word appropriate interest is not a word like employer which might suggest a reference to state law. I think we think this is closer to Buttnich where the Supreme Court was interpreting the word final decision which can be interpreted as a matter of federal law. And courts here can easily define appropriate interest as sufficient interest or adequate interest because that's one of the dictionary definitions of appropriate. So there's no need to look to state law to know what is sufficient interest. And I... Can I ask you on this interest question, when you think the that should trigger the calculation of interest? I think at the time the loans were made the injuries were suffered. However, the... I don't see how you could come to that conclusion at all. How would you calculate the amount of the injury at the time of the loan? The dispute, the evidence in the case is that the founders would not have made the loan had they been informed of the escrow. It could be at the time of default, if that's what it is. If you think that the time of the loan is not the appropriate standard. It could be the time of default. It could be the time that of the foreclosure sale. Yeah, so the reason why... The ultimate or the sale with the credit bid. What I'm trying to suggest is that for these particular claims, pre-judgment interest could easily wind up being a bit of a mess, no matter which, whether it's a federal or state standard that's being applied. Let me just add the thought. I mean, you're suggesting an interpretation of what appropriate interest means. But certainly there is a lot in the word appropriate that suggests discretion to me, perhaps because of the complexities that Judge Hamilton is talking about. If it said principal losses and interest, when appropriate, we probably wouldn't be having this debate. But I'm not sure using it as an adjective, as opposed to a little phrase afterwards, makes such a difference in the meaning. Your Honor, the General Motors case we cite also involved a federal statute where Congress provided no standard at all for how to calculate pre-judgment interest. Yet the court held that the court should decide as a matter of federal law what that means. And the Supreme Court held, yes, the fact that Congress didn't provide a standard does give the court some discretion in calculating the interest. But the Supreme Court held that the statute means that interest should ordinarily be awarded and can only be denied in exceptional circumstances. So the issue is the discretion that the courts might have is not as to whether they can grant the interest, but to how much interest they can give. Ms. Vannessia, can I ask you a quick question about the setoff issue that's being debated here? Can you explain to me the district judge's theory for limiting Chicago titles liability and whether that theory extends to claims or the conduct of PVS? Yes, Your Honor. The district court, the Chicago title moved under the credit bid rule to limit the FDIC's damages to the deficiency judgment. That would be the cap on the FDIC's damages. PVS never made such a motion. I understand that. Does the theory apply to claims against PVS as well? Your Honor, PVS never made such a motion. So we would agree, we would think that it wouldn't apply for two reasons, but they didn't make the motion. The two reasons are that the credit bids that we submitted were inaccurate because they were both tainted by the first appraisal, which we said was wrong, and they were also tainted by the second appraisal. By PVS suggesting independent consequences by the conduct of PVS, right? Let's assume for the moment that Chicago title is entitled to that cap under the credit bid rule. But what you're saying is that PVS did something else wrong in the way it did the appraisals that led to the decision about what the credit bids would be. That sounds to me like an independent wrong, in which case a setoff would not be appropriate. Your Honor, there's exception to the credit bid rule when the credit bids are not accurate. So our claim here was that the credit bids were not accurate, both because the initial appraisals tainted the second appraisals and that the second appraisals were themselves inaccurate. Okay, thank you. We also seek pre-judgment interest under state law, Your Honors. And with respect to that issue, we believe the district court erred in relying, in imposing a purported requirement that the defendant must withhold money in order to obtain interest. That purported pre-judgment interest is only valid if the defendant has not imposed a withholding requirement. This requisite does not exist in Illinois law and has been expressly rejected by the Illinois appellate decision in Walensky, which held that Illinois's law does not impose a withholding requirement. The Illinois appellate decision in Prignano further underscores that a plaintiff must meet only two requirements in order to obtain interest, a breach of duty, and that the plaintiff needs to be made whole. The district court's imposition of So in other words, it's the loss to the plaintiff. It isn't any kind of gain the defendant might have had during the interim. That seems to be your argument, yeah. Yes. And with respect to the set-off issue, we want to bring to the court's attention the Dolan case that cited there. Just like here, well, I would say first that the purpose of a set-off is to prevent double recovery, and here there is no double recovery on the $2.3 million imposed foreclosure injuries because Chicago title is not liable for them under the court's ruling. Chicago title... So what about your allocation point? You know, it seems to me you first look at that $500,000 and say, well, maybe some of it overlapped, some of it didn't, but they didn't ask for an allocation at the right time so that we should presume that nothing overlaps. Because it's their burden to prove an allocation, Your Honor. And are you arguing that, are you conceding that there may be some overlap if this had been timely raised? Well, the Illinois case and Barkay said that they should show how much the parties intended to allocate to the various issues, and there was no evidence of how much the parties intended to allocate here. Right, and because of burden of proof, that winds up being zero. Yes. Okay. I reserve the remainder of my time for rebuttal. All right, that's fine. Mr. Rosenberg. Yes, my name is Eric Rosenberg. I'm with Fidelity National Law Group, counsel for appellees, Chicago Title and Trust, and Chicago Title Insurance Company. And first, I'll just briefly address some of the questions that were just asked by the judges. Mr. Rosenberg, can I, I want to add to one question that Judge Hamilton asked, so you're doing this, I'll do that right now. When I look at the pre-judgment interest statute, it seems to me the way you're telling us to interpret this statute is sort of as follows. Pre-judgment interest is mandatory if it's mandatory, or pre-judgment interest is mandatory unless it's discretionary. So I have some concern about that because it seems like your argument is that appropriate modifies the word shall, not just the word interest. And couldn't the word interest refer to, of course, the amount of the interest and in particular the triggering event? Because in these cases, I suspect there would be a huge dispute as to what is the triggering event for the determination of pre-judgment interest. So why should we read appropriate to modify the word shall, and then pre-judgment interest becomes mandatory unless it's not, and shall doesn't really mean anything at all. I don't think, Your Honor, that it's mandatory at all, and that any of this language, the term appropriate interest, makes it mandatory. But what do you do with the word shall, then? Recoverable damages shall include dot, dot, dot, appropriate interest. Well, as the Fourth Circuit that directly addressed that issue, I would subscribe to their explanation, which was that the word shall doesn't read out the word appropriate, and appropriate modifies the word interest. It does not say that the court shall award interest. It says that recoverable damages shall include appropriate interest. But why couldn't, why doesn't, the Fourth Circuit has made this harder than it needs to be. If it's recoverable damages shall include the losses and appropriate interest, it still leaves the court free to decide what the measure of interest ought to be in the particular circumstances, which might be informed by, you know, the moment of breach and other sorts of things. Well, Your Honor, I would say that the district court can't go wrong by determining what interest is appropriate by the means by which the federal courts have always determined interest is appropriate. That is, that it is governed by the law that governs the underlying claims. And the language of the statute does not change the rule that prejudgment interest is determined by the same law that determines the underlying claims. It keeps interest in principal losses on the same footing. They're at the same, they're in the same part of the sentence grammatically. And the FDIC doesn't argue that federal common law must govern recovery of principal losses, and it therefore doesn't necessarily govern the, require that federal common law always govern prejudgment interest. But, you know, the rule you stated is true unless a federal statute provides otherwise, and I'm now worrying that you're reading 1821L out of the statute. You know, the federal, the receivership statute does provide something about what the recoverable damages ought to include. Well, again, I haven't heard anybody say that it changes the law with respect to the recovery of principal losses, and the statute doesn't always change the law. It can codify the law. And if it doesn't change the law with respect to principal losses, I think the logic evaporates that it should, that needs to change the law with respect to appropriate interest. As to the time when the injuries were suffered, well, certainly the damages were crystallized upon the foreclosure sales, which actually is a matter that's relevant to the FDIC's set-off argument, because the FDIC has posited a separate injury. Mr. Rosenberg, let me interrupt you there, because I pulled up, I looked at your jointly proposed final pretrial order, and on page 34, the last sentence says, excluded from the damages calculations are monies that founders bank lost after acquisition of the properties through its speculation in the real estate market, renovation and resale of the properties. Isn't that exactly what the FDIC is referring to when it says that PVS could have settled a claim related to the damages for which Chicago title was excluded? Well, and I was just going to get to that, because that's really the crux of this set-off issue. And that is because the FDIC could not have gotten those damages on the basis of the allegations in its complaint, of the claims that it actually asserted. And the reason it couldn't have gotten those damages is the measure of damage to a mortgagee, that is a lender, that acquires the property at a foreclosure sale is the total amount of debt minus the value of the property that it is acquiring at the time of the foreclosure sale. Its damages are fixed at the time of the foreclosure sale. It cannot get post-foreclosure renovation costs, post-foreclosure market losses. Those are simply not legally cognizable damages. Those are damages, or if things went better for them, it could have been profits that are made for their own account. So the FDIC had to come up with another wrong that caused an additional injury. And the wrong that they came up with was the second set of appraisals. And unfortunately for them, fortunately for us, as we show at great length in our brief, the FDIC never alleged a claim on the basis of those second appraisals. They never had a claim. They have never had a cognizable claim under that for a number of reasons. Excuse me, are you suggesting that a party can't settle claims that have not been asserted? No, I'm not, your honor. However, and I gotta say the extent of the debate about the potential in the brief leads me to think, why not treat it as settled? If this is so debatable, just, you know, you guys have the burden of showing the benefit here. There's a plausible claim for damages against PBS that wouldn't work against Chicago title, given the district court's rulings. Well, your honor, if I may, there, there is no plausible claim that the FDIC had against PBS that it didn't have against Chicago title. I think one of the questions you had answered earlier, sorry, asked earlier is whether this credit bid theory applies to claims versus PBS. And the answer is an emphatic, yes, the credit bid theory theory though, that we made our bids in that amount because of PBS is negligence. Well, again, that gets back to that second group of appraisals, the first group of appraisals. And this was briefed in, in, in the partial summary judgment papers that led to the credit bid ruling by judge would the first appraisals as a matter of law did not affect their credit bids. They had more recent appraisals that they had to rely on. The second appraisals were negligent or dismissed. Exactly. And they, the FDIC never alleged a claim on the basis of that, but it's more than that. They not only never alleged a claim on the basis of that, they never had a colorable claim. And that's why we go through all that space. And I know your honor has, has just suggested that, well, if we spend that much time on it, there must be something there. I would put it differently. If we put that much time on it to put a hundred nails in that coffin, there is no, there is no cognizable claim there. And the FDIC has never defended the merits of that claim. Never, not before the district court. It doesn't do so before here, before this court, that claim, that claim is just not cognizable. So they never made the claim and they never had a cognizable claim. The only claim that they have and the only claim that they made is the, is the one that created the same injury as Chicago titles conduct. So Mr. Rosenberg, I'd like to take you back for a minute to the prejudgment interest on the assumption that Illinois law is where we ought to look for that. I am very concerned at the district judge's statement that there is some sort of withholding requirement. If you look at a state of Wernick and you look at other Illinois cases, withholding is certainly sufficient for that, but I don't see where it's necessary. And I think the district court may have been an error there as a matter of law. Well, obviously we disagree here, your honor. Right. Tell me why it matters. You know, if I'm right, is there some further response that you have or is this a key issue? Yes, there is your honor. And I would observe, I would observe first of all, that four federal judges have examined this issue and every single one ending with judge would, but every single one has come to the same conclusion on that issue. And that conclusion is that under Illinois law, under equitable principles, it is necessary for the defendant to have with withheld the plaintiff's assets. And I can quote you from Wernick, and that is the rationale underlying an equitable award of pre-judgment interest in a case involving breach of fiduciary duty is to make the injured party complete by forcing the fiduciary... Well, right. To make the injured party whole. And so what if the breaching party just decides to make a bonfire of the money and burns it all up? The wronged party has still been deprived of the use of funds that belong to it. Well, your honor, that would be, I suppose, right on the borderline as to whether it's withholding the money, but to complete that sentence is to make it whole by forcing the fiduciary to account for profits and interest he gained by the use of the injured party's money. And there are so many cases in Illinois, not just the ones we've cited that have actually stated that this is the rule, but it really says something that in all of these fiduciary duty cases in Illinois, many, many of them, that this fact pattern comes up and it's not just a coincidence as so many courts have held. Well, and because it's a common fact pattern, but the fact is, do we worry about the unjust enrichment of the breaching party or are we looking at economic loss suffered by the injured party because of the inability to use the injured party's own money? Those are at least analytically distinct categories. Yes, and some of the cases we have cited have indicated that at least part and maybe all of the rationale for this equitable rule is to force the defendant to disgorge the wrongful gains that it has made. So, you know, there are two policies behind prejudgment interest generally, and with respect to equitable prejudgment interest, certainly one, if not the only policy is, and certainly a major policy, is disgorgement of the wrongful gains. And some of the courts... But a big policy that we've talked about and that has come up in many cases is, given the fact that money has time value, if you don't put prejudgment interest in there, you are not fully compensating the wronged party. Well, and, you know, that's an argument, of course, that the FDIC makes, and my counter to that argument is, yes, the general purpose of this rule is at least in part, and certainly other branches of the prejudgment interest rule is at least in part to compensate the plaintiff. However, cases, as I understand it, aren't decided by the general purpose. They're decided by the specifics of the law, including all the limitations of the law, and that would include just about every branch of civil law. The basic purpose is to compensate the plaintiff for its losses, but there's so many exceptions, and particularly in the area of prejudgment interest, when, for example, in Illinois, you can't get prejudgment interest on a negligence claim, period. But this is different. I mean, where the Illinois court, Illinois appellate court says, the award provides compensation for any economic loss occasioned by the injured party's inability to use his or her money, we either have to ignore that phrase to go your way, or somehow see why it doesn't apply here. And I don't see, again, even if there are a lot of cases that fit the withholding pattern, to say that that's true doesn't say that that is a sine qua non. Well, as I said, all four federal courts that have examined the issue have said that is the sine qua non. We like to make our own decisions here. Yes, yes, your honor. If I could just finish with one thing, the motion to amend the judgment, which is based on the FDIC's argument that the jury's damages that the FDIC sought shows that the jury totally rejected the Chicago title's proximate cause defense. Now, putting aside the fact that that basic premise is counterintuitive, we do know that the jury reduced the verdict because of the proximate cause issue. And we know that because they reduced the verdicts with respect to the LaSalle and Bissell properties, not with respect to the two North Campbell properties. And the LaSalle and Bissell properties expressed, as indicated at great length in our facts section, the LaSalle and Bissell properties experienced catastrophic construction defects, which was the main focus of our proximate cause. Okay, I think we'll have to leave it there. So, thank you very much. Thank you, your honor. Ms. Valencia. Yeah, I would like to make two key points. In response to the argument about the lack of an inclusion of a claim about the second appraisals in the complaint, you know, the credit bid rule or the credit bid limiting damages to the credit bid rule, under the credit bid rule, is a defense. It's a defense. FDIC does not have to plead in its complaint something that it would respond to a defense that a defendant can make. That's why the second appraisal did not have to be included in the complaint for that reason. As I also explained, and I think Chicago Title admits in its brief, we also argued that the first appraisals tainted the credit bids because it gave the FDIC, it gave founders the impression that the value of the properties were much higher than they were. So, for that reason, we never, we didn't include it in the complaint because it was not necessary to our claim for the full million in losses that we suffered on these loans. Now, back to the federal interest under the federal statute, there was a comment that we rely on federal common law in interpreting the statute. And I would like to reiterate that when we cite, for example, the Supreme Court's decision in General Motors, that is a decision interpreting a federal statute that gives discretion. We urge that the court apply the same standard to interpret the statute here that the Supreme Court applied in General Motors, that yes, the court has discretion to award interest, but that discretion, that means that interest would ordinarily be awarded except in exceptional circumstances. For instance, the Supreme Court mentioned undue delay could be an exceptional circumstance. This court in another case suggested that if the jury award is so high that the only possible conclusion is that they already awarded prejudgment interest to compensate for the time of money, then yes, the court shouldn't award prejudgment interest. But other than that, courts know how to award prejudgment interest. More guidance from Congress is not needed. Economic principles teach that interest at the prime rate is the best way to compensate. Ms. Anastasiadis, could you compare the guidance in what I'll call FERIA with respect to imposing a federal law on statute of limitations for FDIC claims as a receiver as compared to the just appropriate interest? And I particularly have in mind the reasoning in O'Melveny and Myers. Your Honor, there is guidance on FERIA about how to calculate prejudgment interest. I don't remember exactly, but I think it's either the period under state law or a longer period. Six years under the federal statute. However, there's no not necessary to provide further guidance for what appropriate interest means because what interest is sufficient to compensate a plaintiff for its losses, courts can do that under economic theory. Thank you. All right. Thank you very much, Ms. Anastasiadis. Thank you, Mr. Rosenberg. We will take the case under advisement.